## FRED J. REDDING V. STATE.

No. 26,716. January 20, 1954.
Rehearing Denied March 17, 1954.

*Walter Conway, Peter S. Navarro, Jr., Martin & Shown,* by *W. E. Martin,* Houston, for appellant.

*William H. Scott,* District Attorney, *King C. Haynie,* Asst. District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted of felony theft and the jury found that he had been twice previously convicted of a felony. The court, thereupon, entered judgment that he be confined in the penitentiary for life. His motion for new trial was heard and overruled and he appeals from the life sentence pronounced against him.

The previous convictions alleged were sufficiently established

by the state's evidence, and no question is raised in regard thereto.

The statement of facts shows, in regard to the primary offense, the following.

Charles E. Hill, the injured party, operated a used car business in Houston under the trade name of H & H Motor Company. On February 28, 1953, appellant came to Hill's place of business and agreed with Hill upon the purchase of a 1946 Ford automobile for the sum of $500, that being its value.

A check or draft for $500, payable to H & H Motor Company, was delivered to Hill who in turn gave to appellant a receipt in that amount, reciting payment in full for the automobile, and appellant was permitted to take possession of the automobile in return for the draft.

The draft was signed by appellant and was drawn on the "Union National Bank," there being no further description of the bank such as its location.

Hill testified that the check or draft was for the full purchase price of the automobile; that he had a conversation with appellant pertaining to the check before he accepted it; that appellant said the bank was "on Main Street"; that he said he had the money in the Union National Bank in Houston; that he was relying on the check and appellant's statement when he took the check, and did not otherwise give his consent or permission for appellant to take the automobile; that he carried the check to the bank which appellant said he was drawing it on, the Union National in Houston, and could get no money on it.

The evidence further shows that appellant had never had an account in the Union National Bank in Houston and that the draft was never paid. The Ford automobile was found in a badly wrecked condition some four days after appellant took possession of it.

Appellant's brief complains (1) that the evidence is insufficient to show an appropriation of the automobile alleged to have been stolen; (2) that the check given Hill in payment for the automobile was inadmissible in evidence; (3) that the court's charge was erroneous in that it did not require the

jury to find that appellant appropriated the automobile, and (4) that the court erred in refusing to charge the jury not to consider the check offered in evidence.

Appellant's first point is predicated upon the assumption that he came into possession of the automobile lawfully. The state's case was in fact for theft by false pretext, it being permissible to prosecute therefor under an indictment alleging ordinary theft.

The offense of theft by false pretext is the obtaining of possession of property by a willing surrender of the owner induced to deliver such possession by false pretext or device and with the fraudulent intent of accused, at the time he came into possession of the property, to appropriate it to his own use, followed such appropriation. Maxwell v. State, 134 Tex. Cr. Rep. 314, 115 S.W. 2d 939.

Under some circumstances the offense of theft would be complete although the owner parted with both title and possession of the property, if he was induced to do so by some false pretext and the other elements were present. Roe v. State, 140 Tex. Cr. Rep. 387, 144 S.W. 2d 1104.

In King v. State, 152 Tex. Cr. Rep. 255, 213 S.W. 2d 541, the facts were similar in all respects to the facts here, and a conviction for theft was affirmed. In the opinion in that case is found the following statement of the law which appears applicable here:

"The constituent elements of theft by false pretext consist, first, in obtaining the property by means of a false pretext; second, that at the time the property is so obtained the accused had the intent to deprive the owner of the value thereof and to appropriate it to his own use and benefit; and third, that pursuant to said intent said property was appropriated by the accused.

"The uncontroverted facts show that appellant, with a view of obtaining the possession of the automobile in question, gave Mr. Price a worthless check which he knew to be worthless. By his fraudulent statements to Mr. Price that it was good; that it would be paid when presented to the bank since he had the money in the bank, he induced Mr. Price to deliver unto him the automobile, otherwise he would not have parted with the possession of the same. The evidence clearly and unmistakeably

shows the false pretext and also shows the fraudulent intent of appellant to deprive Price of the automobile and to appropriate it to his own use and benefit which he did."

On rehearing we said: "We remain convinced that the facts are sufficient to warrant the jury's conclusion that appellant came into the possession of the automobile by a false and fraudulent pretext with the intent, at the time, of depriving the owner of the automobile of the value thereof and to appropriate it to his own use and did so appropriate the automobile, thereby establishing the crime of theft by false pretext. As supporting this conclusion, see, also, Roe v. State, 140 Tex. Cr. R. 387, 144 S. W. 2d 1104."

We think the enactment of the so called "Hot Check Law" made no change in the law relative to prosecution for theft by false pretext. See Gibbs v. State, 158 Tex. Cr. Rep. 145, 253 S.W. 2d 1002.

Appellant took the automobile away from the used car lot and, we think, appropriated it in accordance with his original intention. The question of his acquiring title is hereafter discussed.

Appellant's second contention, that the check or draft was inadmissible, is based upon three grounds: (a) that it was not drawn upon any bank; (b) was not described in the indictment, and (c) that it was unlawfully obtained.

We know of no rule of law which requires that the false pretext or device relied upon, if in writing, must be complete in form, or where the offense charged is theft, that it be described in the indictment. It appears to be the well settled law of this state that a prosecution for theft by false pretext may be maintained upon an indictment for ordinary theft. See Gibbs v. State, 158 Tex. Cr. Rep. 145, 253 S.W. 2d 1002.

As to the third ground, a rather novel question is presented which arises by reason of Art. 1436-1 P.C., known as the certificate of title act.

Under the provision of Sec. 33 of this act no motor vehicle may be disposed of at subsequent sale unless the owner shall transfer the certificate of title, and no title to any motor vehicle shall pass or vest until such transfer be so executed. A penalty for such offense is fixed in Sec. 62 of the act. Sec. 53 provides

that such sale in violation of the act shall be void and that no title shall pass until the provisions of the act are complied with.

Appellant's contention is that because no certificate of title, or transfer of title, was given appellant at the time he took the automobile, the check or draft was acquired by Hill in violation of law and, under the provisions of Art. 727a, V.A.C.C.P., inadmissible. We overrule this contention.

While we do not entirely predicate our holding thereon, we call attention to Art. 6686 V.A.R.C.S. regarding sale or transfer and issuance of temporary license by a dealer, and to the exception found in Sec. 27 of Art. 1436-1 relating to application by the owner for a certificate of title form.

It is true that under the provisions of Art. 1436-1, Sec. 53, no title to a motor vehicle shall pass until the provisions of the act are complied with, also under Sec. 54 it is unlawful for one to apply for a certificate of title on an automobile he knows to be stolen.

However, we know of no rule of law whereby legal title to any personal property may be acquired by theft, whether by false pretext or otherwise, and we see no reason for a distinction where a motor vehicle and not some other personal property is acquired.

The trial court instructed the jury, as to appropriation and intent to appropriate the automobile, that if they believed from the evidence beyond a reasonable doubt that appellant obtained the automobile "with the intent to deprive Charles E. Hill of said automobile and its value, and to appropriate the same to the defendant's use and benefit, *and he did appropriate it - - -"* they would find him guilty.

Appellant complains of the charge as being on the weight of the evidence, and insists that the underlined statement did not require the jury to find that appellant appropriated the property, but in effect told the jury that the facts constituted an appropriation.

We do not believe the language of the charge susceptible to the construction placed upon it by appellant.

Having overruled the contention that the check was inad-

missible, we have disposed of the claim that it should have been withdrawn by instruction of the court.

We find the evidence sufficient to sustain the conviction.

The judgment is affirmed.

ON MOTION FOR REHEARING.

MORRISON, Judge.

For the first time, on motion for rehearing in this court, appellant contends that his trial was so conducted as to deny him due process as guaranteed by the Fourteenth Amendment to the Federal Constitution.

Appellant makes it clear that he is not attacking the constitutionality of Article 63, the so-called Habitual Criminal Statute. In order that his contention may be fully understood, we quote from his brief:

"The indictment contains recitations of appellant's prior convictions which were read to the jury before the plea, and before the presentation of evidence, which reading and recitation were so prejudicial that a fair trial on the merits could not thereafter have been had and in effect are a denial of due process, in contravention of the Constitution of the Unitde States of America."

We have been cited no authority upholding appellant's contention, and he describes it in argument as a novel one. Much emphasis is laid upon the fact that under our statutory procedure the indictment which contains the allegations of the prior convictions is read to the jury before the accused is required to plead. He says that a great prejudice against the accused is aroused by such act. In the case at bar, the prior convictions were proven during the course of the trial, as they had to be in order to support the allegations in the indictment. If, in fact, the jury were prejudiced against the accused when they learned that he had twice before been convicted of felonies, we are at a loss to understand what difference it could make as to when that prejudice was injected into the case. The trial court in this case, as in all cases under Article 63, charged the jury that evidence of previous convictions must not be considered by the jury in considering the guilt or innocence of the accused in the primary offense.

The prior offenses were required to be plead and proven, and we can perceive of no deprivation of constitutional rights by these statutes which have been in existence for many years.

Under Texas practice the jury passes upon the facts and also assesses the punishment (if not definitely fixed by law). We know of no means whereby the statutes for enhancement of punishment because of previous convictions could be used other than by the fact of such prior conviction being alleged and proved and the jury instructed as to the purposes of such allegation and proof and its application if they find that the appellant was the person so previously convicted.

To agree with appellant's contention would be to destroy the enhancement of punishment statutes.

Appellant's motion for rehearing is overruled.